THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.*
MELVIN MILLER, Defendant-Appellant.

Second District   No. 79-491

Opinion filed August 28, 1980.

Peter A. Staben, of Wilson, Staben & Wilson, of Waukegan, for appellant.

Dennis P. Ryan, State's Attorney, of Waukegan (Phyllis J. Perko, Martin N. Ashley, and Gillum Ferguson, all of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE LINDBERG delivered the opinion of the court:

Defendant, Melvin Miller, was found guilty by a Lake County jury of possession of over 30 grams of heroin (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(a)(1)) and possession of heroin under 30 grams (Ill. Rev. Stat. 1977, ch. 56½, par. 1402(b)). Judgment was entered on the verdict for possession of over 30 grams, and defendant was sentenced to four years in the custody of the Department of Corrections. Defendant's post-trial motion was denied and this appeal followed.

On October 25, 1978, at about 10:25 p.m., Waukegan police officers executed a search warrant at 830 Lincoln Street. The warrant was issued on the report of an unidentified informant who had advised officers that he had purchased heroin from the defendant at that address. The informant told officers that the defendant kept both a storm door and the entrance door locked and that the informant would knock at the door and the defendant would come down from upstairs to see what he wanted. The informant also stated that he was not allowed upstairs and that the defendant kept a lookout.

On the night of the search, the officers neither knocked nor announced their presence or purpose, but rather broke through the two locked doors. The defendant was found in an upstairs room with two other men. As an officer entered the room, he found the defendant partially leaning out a window, and saw a movement of the defendant's arm.

In a subsequent search of the area outside the window, police discovered a plastic bag containing a substance later determined to be 35.36 grams of heroin. Although it had rained that evening and the ground was wet, the bag of heroin was dry. The defendant's person was also searched and approximately one gram of heroin was found.

Prior to trial the defendant unsuccessfully moved to suppress the physical evidence on which the charges were based, alleging, among other things, that the officers failed to announce their presence or purpose before their entry. At trial, the defendant presented a witness who was in the house at the time of the raid. This witness testified that he had looked out the window and saw a person named Michael Wilson standing beside his car. Apparently Wilson was the unnamed informant. However, a police officer testified that this witness was not allowed near the window and that Wilson was not seen at the scene until at least 10 minutes after the heroin was found.

After the trial court denied the defendant's motion for a directed

verdict, the case went to the jury which rendered a verdict of not guilty of possession with intent to deliver and guilty of unlawful possession of over 30 grams of heroin. Defendant was also found guilty of the lesser offense of possession of less than 30 grams. Defendant was subsequently sentenced to a term of four years for possession of over 30 grams of heroin.

Defendant argues that the trial court erred in denying his motion to suppress in that sufficient exigent circumstances did not exist to excuse the police officers' failure to make prior announcement of their purpose and authority before gaining entry into the premises to be searched. In *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507, our supreme court held that the existence of exigent circumstances may excuse a police announcement. The court suggested that exigent circumstances could be based on danger to the policemen executing the warrant, the uselessness of the announcement, or the ease with which the evidence may be destroyed. However, the *Ouellette* court specifically rejected a blanket rule that the easily disposable nature of narcotics creates an automatic excuse to an announcement prior to entry. The court concluded that "[w]hat is needed, beyond the knowledge that narcotics are involved, is that 'police have *particular reasons* to reasonably believe in a particular case that evidence will be destroyed.' " (Emphasis added.) 78 Ill. 2d 511, 520, 401 N.E.2d 507, 511.

In the instant case, the State points to the informant's statements to police that the defendant was cautious in his dealings and the fact that the police faced two locked doors and a flight of stairs upon entry as exigent circumstances justifying the lack of announcement. In *Ouellette* the court rejected a similar cautiousness argument. In that case, defendant-Ouellette never permitted anyone who came to the door to enter until he had the visitor fully identify himself. The court found this to be a reasonable precaution that did not amount to exigent circumstances. The fact that in the instant case the narcotics were thought to be located on the second floor protected by locked doors on the first floor presents a more compelling argument for the State as the location of evidence is a factor to be considered in finding exigent circumstances. (*People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513: narcotics alleged to be stored near toilet.) The defendant argues that the credibility of these alleged statements by the informant are questionable as they were only brought out in the hearing on the motion to suppress and were not included in the application for the search warrant. However, it is well settled that this court may not substitute its judgment regarding the credibility of witnesses for that of the trial judge who actually heard their testimony and observed their demeanor. (See, *e.g., People v. Gunsaullus* (1979), 72 Ill. App. 3d 440, 391 N.E.2d 142.) Our review of the testimony in question leads to a conclusion that the trial court's decision is supported by the record.

■■ ■ It is clear from *Ouellette* and *Conner* that the circumstances sur-
rounding the failure to make an announcement prior to executing a search
warrant must be scrupulously viewed to determine if there has been a
fourth amendment violation necessitating the suppression of the evidence
seized. The standard for review in cases such as this is whether the trial
court's determination of the existence of exigent circumstances is mani-
festly erroneous. (*People v. Conner.*) In light of this standard and of the
above summarized evidence and case law, we hold that the trial court did
not err in denying the defendant's motion to suppress.[1]

The defendant also argues that he was not proved guilty beyond a
reasonable doubt with respect to the packet of heroin found outside the
house. During the execution of the search warrant, a police officer saw the
defendant make an extended movement with his left hand while leaning
out an upstairs window. However, the officer did not see the defendant
throw anything out the window. There were also two other subjects in this
particular room at this time. Some 10 minutes after entering the premises,
the officer found a bag containing 35 grams of heroin under some shrubs
on the northeast corner of the property. While the ground was wet from
rain, the bag was dry. A search of the defendant's person yielded less than
one gram of heroin. There was no direct evidence—such as fingerprints—-
linking the defendant to the heroin found outside the building. A police
chemist testified that he could not determine if the heroin in the defend-
ant's pocket and the heroin found outside had a common origin.

■■ The fact of possession must be proved beyond a reasonable doubt.
(*People v. Jackson* (1961), 23 Ill. 2d 360, 178 N.E.2d 320.) The facts in
*Jackson* bear some resemblance to those in the instant case. In *Jackson*,
after a police entry, the defendant locked herself in the bathroom. When
the officers finally gained entry into the bathroom the defendant's purse
was observed lying open on the floor. The bathroom had a window
opening on to an airwell. Several other apartments also had windows
opening onto the airwell, and the airwell at the basement level was
covered with debris. On examination, a packet, later determined to con-
tain heroin, was found on top of the debris. While most of the refuse was
wet, the packet was dry. However, it had not rained for two days. The
defendant denied throwing the packet out the window. Based on the
above summarized evidence the defendant was found guilty of unlawful
possession of narcotics. On appeal, the supreme court reversed, conclud-
ing that there was insufficient evidence to show the defendant ever pos-
sessed the narcotics. The court added: "We are not so naive as to ignore
the very strong possibility, amounting perhaps to a probability, that the

---

[1] The State has also challenged the defendant's standing to challenge the search in
question. In light of the above holding, we see no need to discuss the standing issue.

defendant was indeed in possession of the heroin. Mere probabilities, however, will not support a conviction." 23 Ill. 2d 360, 365, 178 N.E.2d 320, 322.

■■ The instant case is distinguishable from *Jackson* on a number of grounds. First, the narcotics in this case were not found in an area of multiple access littered with debris, but in some shrubs on the property occupied by the defendant. Also, in the instant case, the rain had occurred earlier the same evening. Thus, the dry narcotics packet was of unquestionably recent origin. Finally, in *Jackson* no narcotics were found on the defendant's person or in her apartment. In the instant case, the defendant was found to have nearly a gram of heroin in his possession. This fact tended to link him to the heroin found nearby. (See *People v. Goodman* (1979), 75 Ill. App. 3d 369, 393 N.E.2d 1233, *aff'd* (1980), 81 Ill. 2d 278, 408 N.E.2d 215.) In sum, we reject defendant's reasonable doubt argument.

Finally, the defendant contends that the trial court erred in denying his motion for a directed verdict at the close of all evidence with respect to the possession of the heroin found outside the house. A directed finding of not guilty is proper when the State's evidence, viewed in a manner most favorable to the State, fails to establish the defendant's guilt beyond a reasonable doubt. (*People v. McCord* (1977), 46 Ill. App. 3d 389, 361 N.E.2d 13.) This, of course, is a less favorable standard for a defendant than the standard of proof beyond a reasonable doubt. Thus where, as here, the State's evidence establishes the defendant's guilt beyond a reasonable doubt, the trial court was correct in not directing a verdict of acquittal. *People v. Knowles* (1970), 130 Ill. App. 2d 78, 264 N.E.2d 716.

Accordingly, the judgment of the Circuit Court of Lake County is affirmed.

Affirmed.

SEIDENFELD, P. J., and UNVERZAGT, J., concur.