THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* WILLIAM SEYBOLD, Defendant-Appellant.

Second District    No. 80-68

Opinion filed June 9, 1981.—Supplemental opinion filed on denial of rehearing August 11, 1981.

Norman Nelson, Jr., of Chicago, for appellant.

J. Michael Fitzsimmons, State's Attorney, of Wheaton (Phyllis J. Perko and Barbara A. Preiner, both of State's Attorneys Appellate Service Commission, of counsel), for the People.

Mr. JUSTICE NASH delivered the opinion of the court:

After a bench trial defendant, William Seybold, was found guilty of delivery of a controlled substance (Ill. Rev. Stat. 1975, ch. 56½, par. 1401(c)) and was sentenced to 30 months probation and fined $2,000. He appeals, essentially contending that the warrantless entry and search of the apartment in which he was arrested, without announcement of authority or purpose of the entry, invalidates seizure of the evidence therein.

This court previously considered a limited aspect of this case in an appeal by the State from an order of the trial court granting defendant's motion in arrest of judgment and discharging him. (*People v. Seybold* (1979), 77 Ill. App. 3d 614, 396 N.E.2d 295.) We there determined that motion was improvidently granted and remanded the case to the trial court for consideration of defendant's motion for a new trial in which the issues now presented were raised. The trial court thereafter denied defendant's motion and imposed the sentence from which he appeals.

At the pretrial hearing of defendant's motion to suppress, evidence was presented that on May 3, 1977, agents of the Metropolitan Enforcement Group (MEG), composed of police officers of several municipalities located in Cook County, were conducting a drug investigation in the Village of Addison located in Du Page County. MEG agent Ralph Polan

was working under cover and had arranged to meet a Carol Shane and go with her to the apartment of co-defendant Theresa Smith and her husband Donald in Addison in order to purchase two ounces of "crystal" (methamphetamine) for $1,600. Evidence was presented that defendant Seybold stayed in the three-room apartment occasionally, had some clothes there and at times had given the Smiths money for rent.

Agent Polan and Carol Shane went to the Smith apartment and were invited in by defendant Seybold; the Smiths were not then present. Defendant produced a plastic bag containing a tan powder which appeared to Polan, who was an experienced narcotics investigator, to be crystal methamphetamine saying, "Here's the crystal." Polan placed it on a scale on the kitchen table and determined the substance weighed between 58 and 60 grams. Co-defendant Theresa Smith returned at about this time and joined in the conversation with the others. Agent Polan then left the bag on the kitchen table and saying he had the money in his car, went out of the apartment. While outside he informed MEG agent James Kautz, who was nearby with other agents and representatives of the Addison Police Department, that the sale of drugs was about to take place. Polan then returned to the apartment and gave the money to defendant who commenced counting it. At this time agent Kautz and four or five other agents entered the apartment, some with their weapons drawn. Agent Kautz testified the door was closed but unlocked and that they did not announce their identity or purpose before entering the apartment, but did do so after getting inside. The occupants of the apartment, including Polan, were handcuffed and it was searched. Kautz seized the plastic bag from the kitchen table; marijuana and methampeta-mine were also found elsewhere in the apartment but were not introduced in defendant's trial.

Addison police officers had accompanied the MEG agents to the apartment building but they did not participate in defendant's arrest or the seizure of the evidence therein. None of the MEG agents was a police officer of Addison, deputy sheriff of Du Page County or an officer of any other police agency having jurisdiction in Du Page County. Nor did these agents have arrest or search warrants for any persons or premises.

■■ Preliminarily, we note that in the first appeal of this case it was disclosed that the agents of the Metropolitan Enforcement Group who arrested defendant and searched the premises in which he was found were acting outside of their Cook County jurisdiction and did not have the powers of arrest and search given to peace officers by sections 107—2 and 108—1 of the Code of Criminal Procedure (Ill. Rev. Stat. 1975, ch. 38, pars. 107—2 and 108—1). We determined, however, that the agents would still have the powers of arrest given to all persons by section 107—3 of the

Code. (*People v. Seybold* (1979), 77 Ill. App. 3d 614, 617, 396 N.E.2d 295, 298.) This court has since considered a similar issue in *People v. Marino* (1980), 80 Ill. App. 3d 657, 665, 400 N.E.2d 491, 497, where we held that a warrantless arrest affected by one who is a peace officer who has asserted an authority to arrest which he does not then have is valid if an arrest made by a private person would have been valid under the same circumstances. While the constitutional proscription against unreasonable searches and seizures does not normally apply to a search or seizure carried out by private individuals, it will do so if they are acting as agents or instruments of the State. (*People v. Heflin* (1978), 71 Ill. 2d 525, 539, 376 N.E.2d 1367, 1373-74, *cert. denied* (1979), 439 U.S. 1074, 59 L. Ed. 2d 41, 99 S. Ct. 848.) It seems apparent in the unusual circumstances of the present case, however, that the MEG agents who entered the apartment, arrested defendant, and seized the evidence in issue believed at the time they were acting as police officers and that they were, in fact, conducting the drug investigation on behalf of the State. We conclude that defendant's arrest and the seizure of the drugs in the apartment falls within the protections of the fourth amendment in these circumstances and will review the evidence presented in that light.

We consider first defendant's contention the entry of the apartment and seizure of the controlled substances therein was constitutionally unreasonable as the agents failed to announce their authority and purpose before entering.

In *People v. Wolgemuth* (1977), 69 Ill. 2d 154, 370 N.E.2d 1067, the court noted that Illinois does not have a "knock and announce" statute and, further, that in *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623, the United States Supreme Court did not elevate to a fourth amendment requirement the practice of officers announcing their authority and purpose before entering a house to affect an arrest or search and seizure therein. In *Wolgemuth* the court held that the police failure to do so is not a *per se* violation of the constitution but is a factor for consideration in determining whether a subsequent arrest or search was constitutionally unreasonable. See also *People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513.

■■ The purpose of the requirement that officers announce their authority and purpose before entering a home is to notify those inside of their presence in order to afford them an opportunity to respond so that violence can be averted and privacy protected. (*People v. Wolgemuth*; *People v. Ouellette* (1979), 78 Ill. 2d 511, 401 N.E.2d 507.) Exigent circumstances may exist, however, which excuse the failure of officers to make a prior announcement of their purpose and authority before entering premises in which an arrest or search is to be conducted: where

there is a possibility of destruction of evidence; where there is danger to the officers; where there is a possibility of escape by the occupants; or where compliance would be a useless gesture. *People v. Ouellette*; *People v. Polito* (1976), 42 Ill. App. 3d 372, 355 N.E.2d 725; *People v. Miller* (1980), 87 Ill. App. 3d 1055, 1057, 409 N.E.2d 505, 506.

██ In applying these factors to the evidence adduced at the hearing of defendant's motion to suppress we find the denial of the motion to be manifestly erroneous under the standard of review set forth in *People v. Connor* (1979), 78 Ill. 2d 525, 532, 401 N.E.2d 513, 516. The State contends agent Polan's safety would have been endangered; however, there was no evidence the agents had reason to believe there were weapons in the apartment or that there was any likelihood its occupants would resort to force if their presence were announced. (See *People v. Ouellette*.) Nor was there any likelihood the occupants might escape, as the agents were at the only door to the second floor apartment. (*People v. Rogers* (1978), 59 Ill. App. 3d 396, 375 N.E.2d 1009; *People v. Polito* (1976), 42 Ill. App. 3d 372, 355 N.E.2d 725.) While most drugs can be easily destroyed, our supreme court has rejected imposing a blanket rule in narcotics cases establishing exigent circumstances. (*People v. Ouellette*.) If, however, in a particular case officers have reason to believe evidence might be destroyed, then exigent circumstances can be found to obviate a prior announcement of their entry. No such circumstances are shown in the record of this case. Nor is there any evidence the occupants of the apartment knew they were the subjects of a drug investigation or had previously attempted to elude the police. (See *Ker v. California* (1963), 374 U.S. 23, 10 L. Ed. 2d 726, 83 S. Ct. 1623; *People v. Rogers* (1978), 59 Ill. App. 3d 396, 375 N.E.2d 1009.) Finally, it cannot here be said that an announcement of their presence would have been a useless gesture as would be the case if destruction of evidence was imminent or if it was apparent the occupants of the apartment were already aware of the agent's presence.

We conclude on the record of this case there were no exigent circumstances shown excusing the failure of the MEG agents to announce their authority and purpose, and the entry of the apartment was not constitutionally reasonable under all of the circumstances presented. The arrest of defendant must therefore be quashed and the seizure of evidence incident to the arrest must be suppressed. See *People v. Patrick* (1981), 93 Ill. App. 3d 830, 417 N.E.2d 1056; *People v. Wilson* (1980), 86 Ill. App. 3d 637, 408 N.E.2d 988; *cf. People v. Conner* (1979), 78 Ill. 2d 525, 401 N.E.2d 513; *People v. Miller* (1980), 87 Ill. App. 3d 1055, 409 N.E.2d 505; *People v. Logan* (1979), 78 Ill. App. 3d 646, 397 N.E.2d 504.

For these reasons the denial of defendant's motion to suppress

evidence will be reversed and, as he could not have been found guilty without the suppressed evidence, his conviction must be reversed. Because of our resolution of this issue, we need not consider the other arguments made by defendant.

Judgment reversed.

LINDBERG and REINHARD, JJ., concur.

## SUPPLEMENTAL OPINION ON DENIAL OF REHEARING

Mr. JUSTICE NASH delivered the opinion of the court:

In its petition for rehearing the State requests we address the issue of defendant's "standing" to challenge the entry of the apartment in which he was arrested and the drugs seized. Although we considered that issue to have been implicitly determined by our opinion, we will do so.

In *Rakas v. Illinois* (1978), 439 U.S. 128, 58 L. Ed. 2d 387, 99 S. Ct. 421, and *United States v. Salvucci* (1980), 448 U.S. 83, 65 L. Ed. 2d 619, 100 S. Ct. 2547, the court held that only one whose fourth amendment rights have been violated may benefit by the exclusionary rule and may do so if a governmental invasion occurred in an area in which he had a personal legitimate expectation of privacy. The court rejected its prior holding in *Jones v. United States* (1960), 362 U.S. 257, 4 L. Ed. 2d 697, 80 S. Ct. 725, that a "target" defendant against whom a search had been directed or one who was legitimately on the premises searched had an automatic "standing" to contest the legality of the search.

We then consider whether under the *Rakas-Salvucci* standards defendant had such an expectation of privacy in the apartment entered and searched that he may claim the protection of the fourth amendment.

The State contends that as defendant was not on his own premises only the tenants, Donald and Theresa Smith, could seek to suppress the fruits of the search which we have deemed to have been unreasonably conducted.

As noted in our opinion, the record discloses that the defendant stayed in the Smith apartment occasionally, kept clothes there and paid rent to the Smiths. The record also discloses that on being released after his arrest defendant listed the apartment building address as his own address on the bail bond form which he then executed. It is also apparent he was alone in the apartment when he admitted agent Polan to it although Theresa Smith returned prior to the entry by the other officers.

While the United States Supreme Court in *Rakas* rejected the broad "legitimately on the premises" standard set down in *Jones*, it found that

the holding in *Jones* would have remained the same under its facts. The court noted that whether one had a recognized property interest in the premises was not dispositive, as a person can also have a legally sufficient interest in a place other than his own home so that the fourth amendment protects him from unreasonable governmental intrusion. (*Rakas*, 439 U.S. 128, 142, 58 L. Ed. 2d 387, 400, 99 S. Ct. 421, 430.) In *Jones* the defendant was present during the search of an apartment of a friend who had given him permission to use it. He kept a suit and shirt at the apartment and had slept there "maybe a night," but his home was elsewhere. While the lessee of the apartment was not present at the time of the search and Jones was then its only occupant, the court considered he had a legitimate expectation of privacy which entitled him to the protection of the fourth amendment.

■■ It seems apparent in the present case that Seybold's status in the Smith apartment exceeded that of a casual guest or visitor and that it was essentially similar to that of the defendant in *Jones*. This court has held that a defendant has "standing" to contest police entry of his employer's premises (*People v. Davis* (1980), 86 Ill. App. 3d 557, 559-60, 407 N.E.2d 1109, 1112), and in *People v. Wilson* (1980), 86 Ill. App. 3d 637, 640, 408 N.E.2d 988, 991, it was noted that an occupant of a motel room is entitled to the fourth amendment protections against unreasonable governmental searches and seizures. We conclude on the record before us that defendant had a legitimate expectation of privacy in the apartment and could thus assert the protections of the fourth amendment.

While this case was heard in the trial court under the broad *Jones* standard, on review we must not apply the standards set forth in *Rakas-Salvucci* which apply retroactively. (See *People v. Beroukas* (1981), 98 Ill. App. 3d 990.) We have assumed the record is complete as to this issue as the State has not requested the case be remanded for a further evidentiary hearing. We adhere to our opinion, and the petition for rehearing will be denied.

Petition for rehearing denied.

LINDBERG and REINHARD, JJ., concur.